UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SHERIE WHITE,

    Plaintiff,

  v.

GMRI, INC., dba Red Lobster,

    Defendant.

CASE NO. CIV. S-04-0620 WBS KJM

MEMORANDUM AND ORDER RE: ATTORNEYS' FEES AND COSTS

----oo0oo----

Plaintiff Sherie White brought suit against defendant GMRI alleging that defendant violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12300, and various California statutes. The parties entered into a settlement agreement in September 2005. Pursuant to that agreement, the court granted the parties' stipulation to dismissal with prejudice, save and except for plaintiff's motion for attorneys' fees and costs. The court now considers plaintiff's motion for an award of attorneys' fees pursuant to 42 U.S.C. § 12205.

1

I.   Factual and Procedural Background

     Plaintiff filed suit in March 2004, seeking injunctive and declaratory relief, statutory damages, $100,000 in general and special damages, attorneys' fees, interest, and punitive damages under the ADA and California law. (Compl.)  Plaintiff filed a Motion for Summary Judgment on July 11, 2005, but withdrew the motion on September 6, 2005, at which time settlement negotiations were underway.  On November 15, 2005, the parties filed a settlement agreement and the case was dismissed. (Stipulated Req. for Dismissal and Order.)

     Pursuant to this settlement, the plaintiff released all of her equitable claims in exchange for $8,000 and defendant's promise to remove 41 offending architectural barriers from its facility. (Orlick Decl. Ex. P at 1.)  Additionally, plaintiff retained her right to seek attorneys' fees incurred as a result of this action. (Id.)  Plaintiff now moves for attorneys' fees and costs in the amount of $26,736.94. (Pl.'s Mot. for Attys' Fees 2). Defendant opposes this motion in its entirety and seeks a denial of all attorneys' fees and costs.

II.   Discussion

     Pursuant to 42 U.S.C. § 12205,[1] a federal court may award reasonable attorneys' fees to the prevailing party in an

---

[1] The provision reads in full:
In any action or administrative proceedings commenced pursuant to [the ADA], the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205.

2

action under the ADA. A prevailing plaintiff under the ADA "should ordinarily recover an attorneys' fee unless special circumstances would render such an award unjust." Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir. 2002) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)). The district court determines the amount of the attorneys' fees by using the lodestar calculation--the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hensley, 461 U.S. at 433. There is a strong presumption that the lodestar amount is reasonable. Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 n.4 (9th Cir. 2000) (citation omitted). However, the court may adjust the lodestar figure if various factors overcome the presumption of reasonableness.[2] Hensley, 461 U.S. at 433-34. Additionally, the general rule prescribing the use of the lodestar figure does not apply when a civil rights

---

[2] The court may adjust the lodestar figure on the basis of the Kerr factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975). However, many of the Kerr factors have been subsumed in the lodestar approach. Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1988). Moreover, the court should consider the factors established by Kerr, but need not discuss each factor. Sapper v. Lenco Blade, Inc., 704 F.2d 1069, 1073 (9th Cir. 1983).

plaintiff receives only limited or technical success. Fischer, 214 F.3d at 1119.

### A. The Prevailing Party

A civil rights plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992). A settlement which modifies a defendant's behavior so as to directly benefit the plaintiff materially alters the legal relationship between the parties and confers "prevailing party" status upon the plaintiff. Barrios, 277 F.3d at 1134 (affirming that the plaintiff was a prevailing party when the settlement agreement prohibited the defendant from excluding the plaintiff from coaching baseball games and required the defendant to pay the plaintiff $10,000 in damages).

Here, the parties' settlement obligates the defendant to effect 41 architectural changes to its facility and pay plaintiff $8,000 in damages. This is a material alteration of the legal relationship between plaintiff and defendant to the direct benefit of plaintiff. Therefore, plaintiff is the prevailing party for purposes of § 12205.

### B. Lodestar Calculation

#### 1. Hours Reasonably Expended

Properly calculated fee awards should represent the reasonable worth of the services rendered in vindication of the plaintiff's civil rights claim. Blanchard v. Bergeron, 489 U.S. 87, 96 (1989). "Counsel for the prevailing party should make a

4

good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." Hensley, 461 U.S. at 434. When the hours worked or the rates claimed are not supported by evidence or adequate documentation, the district court may reduce the award accordingly. Id. at 433.

Plaintiff has submitted a billing statement itemizing the time counsel spent on this matter. Plaintiff seeks $19,539.75 in attorneys' (and paralegals') fees and $7,197.19 in costs. (Lynn Hubbard Decl. Ex. A.) Defendant would have the court deny all fees and costs as lacking the requisite evidence and documentation.[3] (Def.'s Opp'n to Pl.'s Mot. for Attys' Fees 17.) Because plaintiff has included general itemization and documentation to support the request for an award of attorneys' fees, and because plaintiff's itemization is not deficient as a whole, the court need only address the allegedly unreasonable line items.

### a. Conflict check

In two other ADA cases before this court in which the Law Offices of Lynn Hubbard III also served as plaintiff's counsel, the court did not allow a fee to be collected for an initial conflict check. Loskot v. U.S.A. Gasoline Corp., No. 01-2125, slip op. at 11 (E.D. Cal. Apr. 26, 2004); Eiden v. Thrifty Payless Inc., No. 04-398, 2005 WL 3577146, at *2 (E.D. Cal. Feb.

---

[3] Additionally, defendant invites the court reconsider its previous refusal to deny plaintiff's attorneys' fees and costs for failure to give the proper pre-litigation notice based on Doran v. Del Taco, Inc., 373 F. Supp. 2d 1028, 1029 (C.D. Cal. 2005). (Def.'s Opp'n to Pl.'s Mot. for Attys' Fees 3 n.8.) The court declines defendant's invitation as this issue is settled within the Ninth Circuit. See Botosan v. Paul McNally Realty, 216 F.3d 827, 832 (9th Cir. 2000).

5

23, 2005). In both of those cases the court was "not persuaded that Lynn Hubbard routinely bills paying clients and collects from them for time spent on conflict checks." Eiden, 2005 WL 3577146, at *2. In particular, the undersigned noted in Eiden, after quoting Loskot, that "[n]othing has changed the court's perception" since the first instance where Lynn Hubbard was denied fees for performing an initial conflict check. Id. Once again, nothing has changed the court's perception, and therefore Lynn Hubbard's charge for a 0.7 hour initial conflict check is disallowed.

### b. Communications with client

Plaintiff has filed 59 separate ADA actions in this court under the counsel of the Law Offices of Lynn Hubbard III and she gives her counsel complete authority to settle her cases. (Orlick Decl. Ex. C at 13.) Based on the length and nature of the attorney's professional relationship with the plaintiff, lengthy discussions of fee agreements would not seem to be necessary. This court has previously reduced the time reasonably expended drafting a client's fee letter and agreement by two-thirds, based on the sheer volume of ADA cases handled by the Hubbards. Eiden, 2005 WL 3577146, at *3. Given the relationship between counsel and plaintiff in this case and counsel's experience with such a routine task, the court will take the same approach in this instance to counsel's time spent on the fee agreement. Consequently, the time attributed to Bonnie

Vonderhaar will be reduced by .67 hours.[4]

### c. Discrepancies in paralegal time

There are troubling discrepancies between several of the line items presented to this court and the documents those line items reference. In six similar entries, plaintiff purported to have service of documents accomplished by a paralegal even though a legal assistant of a different name signed the proofs of service. These discrepancies are sufficient to render inadequate the documentation for those hours charged. Accordingly, 1.5 hours will be struck from the time attributed to Alisha Petras and .3 hours will be struck from the time attributed to Bonnie Vonderhaar.

### d. Discovery requests

Plaintiff attributed six hours to Alisha Petras and 1.5 hours to Lynn Hubbard for the preparation and review of Plaintiff's Request for Admissions, Plaintiff's Request for Production of Documents, and Plaintiff's Propounded Interrogatories. These documents are overwhelmingly similar to the discovery requests served on the same defendant by the same plaintiff in a separate action filed three weeks prior to the instant case. (See Def.'s Opp'n to Pl.'s Mot. for Attys' Fees, Orlick Decl. ex. M pts. 1-3, White v. GMRI, CV-04-0465 (E.D. Cal.

---

[4] Defendant also challenged the 24 minutes that plaintiff's counsel claims to have spent discussing settlement demands with the client. Although plaintiff's deposition testimony calls into question whether these discussions actually took place, the court finds that 24 minutes is not an unreasonable amount of time to devote to a discussion regarding settlement. Moreover, the court assumes this conversation took place at some point in time because counsel is ethically obligated to discuss settlement offers with a client.

7

filed Mar. 8, 2004).)  The court finds plaintiff's expenditure of 7.5 hours to produce essentially identical documents to be excessive.  The reasonable amount of time expended on minor changes in the document is a third of what was requested by plaintiff.  See Eiden, 2005 WL 3577146, at *7.  Accordingly, the court reduces the time attributed to plaintiff's discovery requests by two-thirds, deducting four hours from the time attributed to Alisha Petras and one hour from the time attributed to Lynn Hubbard.

### e. Meetings with calendar clerk

Plaintiff attributes 3.6 hours of paralegal time to ten meetings with the calendar clerk.  It is reasonable for a paralegal to keep the calendar clerk informed of case developments.  Martinez v. Longs Drug Store, Inc., No. S-03-1843, 2005 WL 3287233, at *7 (E.D. Cal. Nov. 28, 2005).  However, .2 hours is a reasonable duration for such a meeting, rather than the .36 hours per meeting (on average) proposed by plaintiff.  Id.  The court will reduce the total amount of time spent on calendar meetings by 1.6 hours, subtracting that amount from the time charged by the paralegals.[5]

### f. Failure to settle on February 3, 2005

Defendant points out that plaintiff was offered full injunctive relief on February 3, 2005 and contests any fees incurred after that offer as unnecessary and unrecoverable.

---

[5] Of the ten meetings conducted, nine were handled by Ms. Vonderhaar.  Ms. Petras handled only one and she spent the appropriate .2 hours accomplishing this task.  Accordingly, the court will deduct the entire 1.6 hours from Ms. Vonderhaar's total time.

1  (Def.'s Opp'n to Pl.'s Mot. for Attys' Fees 6.)  Injunctive
2  relief, however, was not the sole relief sought by plaintiff in
3  this matter, and there is no indication that the parties had
4  reached agreement with regard to money damages.  The fact that
5  the <u>injunctive</u> relief that was ultimately settled upon closely
6  resembled what was offered on February 3, 2005 is of no
7  consequence.  A civil rights plaintiff may recover attorneys'
8  fees even for an unsuccessful stage of litigation, provided that
9  the unsuccessful stage was a necessary step towards her ultimate
10 victory.  <u>Cabrales v. County of Los Angeles</u>, 935 F.2d 1050, 1053
11 (9th Cir. 1991).

12         Litigation after February 3, 2005 was a necessary step
13 toward plaintiff's ultimate victory.  As of that date, the
14 parties had not agreed upon all of the terms of the settlement.
15 More litigation, including a motion for summary judgment, was
16 required before the parties reached mutual resolution.  Plaintiff
17 achieved ultimate victory only after achieving settlement for
18 both injunctive and economic relief.  Plaintiff is thus entitled
19 to fees incurred after February 3, 2005, subject to the remaining
20 lodestar calculation.

21         2. <u>Rate Reasonably Charged</u>

22         The reasonable hours expended in this litigation must
23 be multiplied by a reasonable hourly rate to determine the
24 lodestar amount.  To determine the reasonableness of hourly rates
25 claimed, the court looks to the "prevailing market rates in the
26 relevant community," <u>Blum v Stenson</u>, 465 U.S. 886, 895 (9184),
27 for "similar work performed by attorneys of comparable skill,
28 experience, and reputation," <u>Chalmers v. City of Los Angeles</u>, 796

F.2d 1205, 1210-11 (9th Cir. 1997).  The fee applicant bears the burden "to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those in the prevailing community . . . ."  <u>Blum</u>, 465 U.S. at 895 n.11.  The relevant community is generally the forum in which the district court sits.  <u>Barjon v. Dalton</u>, 132 F.3d 496, 500 (9th Cir. 1997).

Plaintiff's counsel seeks a hourly compensation rate of $305 for Lynn Hubbard, $275 for associate Scott Hubbard, and $90 for paralegals Bonnie Vonnderhaar and Alisha Petras.  (Hubbard Decl. Ex. A.)  This court has consistently found that $250 per hour for an experienced attorney, $150 for associates, and $75 for paralegals, are reasonable hourly rates for this community. <u>Loskot</u>, No. 01-2125 at 8-9 (applying those rates to determine plaintiff's attorneys' fees); see also <u>Sanford v. Thrifty Payless, Inc.</u>, No. 02-480, 2005 WL 2562712, at *4 (E.D. Cal. Oct. 11, 2005) (implicitly recognizing that these are rates are still reasonable); <u>Hiram C. v. Manteca Unified Sch. Dist.</u>, No. 03-2568, slip op. at 3 (E.D. Cal. Nov. 5, 2004) (finding $250 to be a reasonable hourly rate for an experienced attorney).

To account for the departure from the traditional hourly rates, plaintiff seeks a 22% cost-of-living increase for all rates.  Plaintiff has not produced satisfactory evidence to meet the burden required to effect such increases.[6]  The only evidence offered to support the cost-of-living increase is a

---

[6] Congress certainly has not perceived the need for anything even approaching such an adjustment in determining its own salary or the salary of federal judges.

10

statistic from the United States Department of Labor referencing a 22% nationwide inflation increase since 1998.  (Pl.'s Mot for Attys' Fees 3.)  This statistic is deficient in two regards.  First, nationwide statistics do not necessarily reflect the statistics attributable to this judicial district, the appropriate focus for a reasonable hourly rate inquiry.  Second, even if this district experienced a similar increase in inflation, increases in inflation do not always cause increases in the prevailing market rates for ADA attorneys in this district.  Moreover, just four months ago, another judge in this district implicitly recognized that the above rates are still reasonable for an ADA case in the Eastern District.  Sanford, 2005 WL 2562712, at *4.

In addition to the cost-of-living increase sought by plaintiff, plaintiff asks the court to "increase [Scott Hubbard's] hourly rate to match his knowledge, expertise, and skill as an expert in ADA law."  (Pl.'s Mot for Attys' Fees 4.)  The burden is on the fee applicant to provide satisfactory evidence that such an increase is due, considering the hourly rates of comparable attorneys in this district.  Plaintiff provides no evidence in support of this request and, therefore, plaintiff has not met her burden.[7]  Thus, the court will apply the hourly rates of $250 for Lynn Hubbard, $150 for Scott Hubbard,

---

[7] Plaintiff invites the court to name another party, attorney, or expert witness with more knowledge of disabled access law than Scott Hubbard.  This ignores the relevant standard and improperly attempts to shift her burden.  It is the plaintiff's burden, not the court's, to provide satisfactory evidence.  See also Sanford, 2005 WL 2562712, at *4 (denying counsel's request seeking a rate of $175 for associate attorneys including Scott Hubbard).

11

and $75 for Bonnie Vonderhaar and Alisha Petras.

Tangentially related to questions regarding rates, defendant contends that Alisha Petras is unqualified as a paralegal and asks the court to strike all hours attributed to her work. (Def.'s Opp'n to Pl.'s Mot. for Attys' Fees 12.) For support, defendant cites California Business and Professions Code § 6450(c)(4),[8] requiring a paralegal with only a high school diploma to have acquired a minimum of three years of law-related experience before December 31, 2003, and also requiring a written declaration by the attorney from whom this experience was gained. Although Ms. Petras allegedly acquired six years of law-related experience prior to December 31, 2003, plaintiff does not provide a written declaration from any supervising attorney who oversaw Ms. Petras during that time. (See Pl.'s Reply 6.)

To clarify, defendant does not dispute that paralegal time is compensable under the attorney fee award statute. (Def.'s Opp'n to Pl.'s Mot. for Attys' Fees 11.) Instead, defendant asks the court to prevent plaintiff from recovering for

---

[8] California law states that:

A paralegal shall possess at least one of the following: . . . (4) A high school diploma or general equivalency diploma, a minimum of three years of law-related experience under the supervision of an attorney who has been an active member of the State Bar of California for at least the preceding three years or who has practiced in the federal courts of this state for at least the preceding three years, <u>and a written declaration from this attorney stating that the person is qualified to perform the paralegal tasks</u>. This experience and training shall be completed no later than December 31, 2003.

Cal. Bus. & Prof. Code § 6450(c) (emphasis added).

12

Ms. Petras' time at paralegal rates for failure to properly document her qualifications. (Id. at 12.) The plain language of the statute implicated here requires that a written declaration from the attorney who supervised the individual's acquisition of law-related experience stating that the individual is qualified to perform the requisite paralegal tasks. Cal. Bus. Prof. Code § 6450(c)(4).[9]

In another case before this court, Judge Levi concluded that Ms. Petras was not a qualified paralegal under California law and that her time should be compensated at the rate of a legal assistant. Sanford v. GMRI, No. 04-1535, slip op. at 8-9 (E.D. Cal. Nov. 11, 2005). Plaintiff argues that because of a bad relationship between Petras and the attorney who supervised her training, "such a declaration will never be filed." (Pl.'s Reply 10-11.) Plaintiff cites no caselaw that would guide the court as to how to incorporate this unsubstantiated argument of factual impossibility and relieve plaintiff from the requirement set out in § 6450(c)(4). Therefore, in line with the court's previous ruling, Ms. Petras' will be treated as a legal

---

[9] Although the Local Rules pertaining to motion practice do not provide for a response to replies to the opposition to motions, defense counsel submitted a "sur-reply" to plaintiff's reply memorandum, in which defendant challenges the timeliness of plaintiff's reply and attaches a declaration from Ms. Petras' former employer saying that she was not qualified as a paralegal. This declaration does not alter the court's determination with regard to the work performed by Ms. Petras.
   Plaintiff's attorney later called the clerk and asked for permission to file a "sur-sur-reply." The briefing has to stop some time, and it has stopped now. Counsel for both sides asked to have the motion submitted without argument, and that is what the court has done.

13

assistant[10] whose fees are not separately reimbursable. See Sanford, 2005 WL 2562712, at *3 ("While the Court will permit recovery of time expended by paralegals, secretarial costs are deemed by courts within this circuit to constitute overhead . . . and are thus not separately reimbursable." (citations omitted)).

### 3. Adjusting the Lodestar Calculation

Defendant requests that this court apply a negative multiplier to the court determined lodestar amount. (Def.'s Opp'n to Pl.'s Mot. for Attys' Fees 15). Defendant argues that all twelve of the Kerr factors weigh in favor of reduction. (Id. at 14.) However, five Kerr factors are subsumed in the lodestar analysis: (1) the novelty of the issues, (2) the skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement. Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Further, there is a strong presumption that the lodestar amount is reasonable. Fischer, 214 F.3d at 1119 n.4.

Defendant focuses its argument for a lodestar reduction on the presumption that plaintiff achieved only limited success. (Def.'s Opp'n to Pl.'s Mot. for Attys' Fees 13-15.) To consider

---

[10] California Business and Professions Code § 6450(c)(3) allows a person with a baccalaureate degree or an advanced degree in any subject to qualify as a paralegal after one year of law-related experience under the supervision of an attorney who provides a declaration "stating that the person is qualified to perform paralegal tasks." Unfortunately, Ms. Petras cannot qualify under this provision by simply providing a declaration from her employer Lynn Hubbard attesting to her qualifications as a paralegal. In her sworn statement, she admitted to only having an associate degree, which is not equivalent to the baccalaureate degree required under subsection (c)(3). See Cal. Sch. of Culinary Arts v. Lujan, 112 Cal. App. 4th 16, 28 (2003); (Petras Decl. ¶ 2 ("I hold a Specialized Associate Degree in Business and Legal Office Management from Empire College . . . .").

14

1  the plaintiff's relative success is to consider the results
2  obtained by the plaintiff, a factor subsumed in the lodestar
3  analysis.  This circuit disfavors consideration of subsumed
4  reasonableness factors after the lodestar has been calculated.
5  Morales, 96 F.3d at 364 n.9.  Therefore, the court is unpersuaded
6  by defendant's argument in favor of departure from the lodestar
7  calculation.

        4. Costs

9          Plaintiff seeks $5,423.75 in costs for an expert report
10 prepared by JPC Contracting.  (Pl.'s Mot. for Attys' Fees Ex. A.)
11 Such costs may be awarded under § 12505 as part of "litigation
12 expenses."  H.R. Rep. No. 101-485 (III), at 73 (1990), reprinted
13 in 1990 U.S.C.C.A.N. 445, 496 ("Litigation expenses include the
14 costs of expert witnesses."); Robins v. Scholastic Book Fairs,
15 928 F. Supp. 1027, 1036 (D. Or. 1996).  However, plaintiff's
16 request includes a $2,700 bill for "Draftsman Hours" from Mika
17 Telecom Group, which was increased to $3,105 after a 15% JPC
18 Contracting surcharge.  (Id. at Ex. C (JPC invoice).)  Defendant
19 contends that the Mika Telecom Group invoice is too unclear and
20 speculative to support consideration of its amount.  (Def.'s
21 Opp'n to Pl.'s Mot. for Attys' Fees 17.)  Defendant also contends
22 that the "Invoice Breakdown" provided by plaintiff contradicts an
23 invoice previously sent to defendant.  (Compare id. Ex. C
24 (Invoice breakdown), with Orlick Decl. Ex. BB.)

25         The burden is on the fee applicant to submit proper
26 documentation for fees sought.  Hensley, 461 U.S. at 434.  The
27 court agrees that the cost attributed to Mika Telecom Group are

15

insufficiently documented.[11]  As to the remaining cost of the JPC Contracting report, it is clear that some work was completed in relation to this case.  However, due to the contradicting invoices, it unclear as to the exact amount of time spent.  Because plaintiff has failed to meet her burden of proper documentation, all costs for this report will be denied.

III. Conclusion

In accordance with the foregoing discussion, attorneys' fees are awarded in the following amounts:

| | | |
|---|---|---|
| Lynn Hubbard: | (46.55 - 1.7) hours @ $250/hr   = | $11,212.50 |
| Scott Hubbard: | 5.50 hours @ $150/hr   = | $825.00 |
| Paralegals: | (42.55 - 26.52) hours @ $75/hr   = | $1,202.25 |
| Costs: | ($7,197.19 - $5,423.75)   = | $1,773.44 |
| | **TOTAL =** | **$15,013.19** |

IT IS THEREFORE ORDERED that plaintiff's motion for attorneys' fees and costs be, and the same hereby is, GRANTED in the total sum of $15,013.19.

DATED:  January 19, 2006

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[11]  The court is not convinced that this bill invoices "architectural drawings" as claimed in plaintiff's reply brief. (Pl.'s Reply in Support for Attys' Fees 12.)  It is clear to even the untrained eye that the only drawings provided in the report are copies from the "Federal Register" Vol. 63, No. 8.  (Orlick Decl. Ex. CC.)

16