UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SHERIE WHITE,

    Plaintiff,

  v.

GMRI, INC., dba Red Lobster,

    Defendant.

NO. CIV. S-04-0620 WBS KJM

MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION FOR RECONSIDERATION

----oo0oo----

    Pursuant to Federal Rule of Civil Procedure 59(e), plaintiff Sherie White moves for reconsideration of and relief from the court's January 19, 2006 order regarding attorneys' fees, litigation expenses, and costs.

I.   Factual and Procedural Background

    Plaintiff filed suit in March, 2004, seeking injunctive and declaratory relief, statutory damages, $100,000 in general and special damages, attorneys' fees, interest, and punitive damages under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12300, and California law.  (Compl.)  On November 15, 2005, the parties filed a settlement agreement and the case

1

1 was dismissed.  (Stipulated Req. for Dismissal and Order.)
2 Subsequent to the settlement and dismissal, plaintiff filed a
3 motion for attorneys' fees seeking fees and costs in the amount
4 of $26,736.94.  (Pl.'s Mot. for Attys' Fees 2.)

5      This court awarded a reduced amount of fees, expenses,
6 and costs after, among other things, (1) denying the request of
7 plaintiff's attorneys Lynn and Scottlynn Hubbard (hereinafter
8 referred to as "the Hubbards") for a cost of living increase in
9 their attorneys' fees and awarding them, respectively, $250 and
10 $150 an hour as reasonable rates, and (2) denying of all fees
11 billed for Alisha Petras.  After the deductions, the court
12 awarded plaintiff a total of $15,013.19. (Jan. 19, 2006 Order
13 16.)  Plaintiff filed this motion for reconsideration on February
14 2, 2006.  Plaintiff now moves the court to reconsider its
15 findings as to (1) the reasonable hourly rate for the Hubbards
16 and (2) the denial of all fees billed for Ms. Petras.[1]
17 ///

---

[1] Plaintiff included in her motion for reconsideration a request that the court sanction defense counsel and Max Arnold for the declaration filed by Arnold regarding Alisha Petras' qualifications as a paralegal.  This motion was not noticed as required by Federal Rule of Civil Procedure 11(c)(1) and it was improperly embedded in the brief for another motion.  See Fed. R. Civ. P. 11(c)(1) ("A motion for sanctions under this rule shall be made separately from other motion or requests . . . .").  In the alternative, plaintiff requests that the court issue an Order to Show Cause.  (Pl.'s Mot. for Recons. 9.)
    Regardless of the veracity of Mr. Arnold's declaration, the court did not consider the declaration as part of its finding regarding Petras.  Moreover, although Arnold's declaration now appears questionable in light of the documents subsequently compiled by plaintiff after a "long and arduous review" of filings in a suit between Petras and Arnold, no evidence suggests that defendant's attorneys had reason to doubt Arnold (other than the fact that his license to practice law has been suspended in the past).

2

II.  Discussion

    A.  Legal Standard

         Although not expressly provided for in the Federal Rules of Civil Procedure, a "motion for reconsideration" may properly be brought under Rule 59(e) and Local Rule 78-230(k). In re Arrowhead Estates Dev. Co., 42 F.3d 1306, 1311 (9th Cir. 1994); Healy v. MCI Worldcom Network Serv., Inc., Civ. S-02-1575, 2005 WL 2000862 (E.D. Cal. Aug. 18, 2005); Fed. R. Civ. P. 59(e); E.D. Cal. R. 78-230(k).  In accordance with those rules, reconsideration of a judgment is appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."  Sch. Dist. No. 1J, Multnomah Co., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).  The district court has considerable discretion in deciding a motion for reconsideration, however, the standards should be applied to "reflect district courts' concern for preserving dwindling resources and promoting judicial efficiency."  Healy, 2005 WL 2000862, at *1 (quoting Costello v. U.S. Government, 765 F. Supp. 1003, 1009 (C.D. Cal. 1991)) (alteration in original).

    B.  Cost of Living Increase

         The hourly rate at which attorneys are compensated for their services is not the product of some benevolent desire to assure that lawyers' quality of life keeps up with inflation.  It is determined by the cold, hard forces of the marketplace, i.e. by the law of supply and demand.  To put it simply, where there are few lawyers available to perform legal services in high

3

demand, they may command high hourly rates. But when others see the opportunity to compete with them for their clients and cases, the effect will be to reduce the hourly rates which they may successfully charge.

The Hubbards were among the first to represent plaintiffs in ADA cases in this court. What they do is not overly complex. They represent a few clients, each of whom brings numerous ADA actions in this court each year. Just as an example, over the last five years the Hubbards have filed over 165 cases on behalf of just one of their clients, James Sanford, and over 60 cases on behalf of plaintiff in this case Sherie White. By the Hubbards' own account, they have filed "almost 1030 ADA lawsuits" in the last four years. It is not difficult for their clients to find public accommodations to target as defendants. Indeed, it would be difficult to find any restaurant, specialty store, service station, or other public accommodation between Chico and Sacramento which does not have some barrier to disabled access under the Americans with Disabilities Act Accessibility Guidelines ("ADAAG").

The complaints in all of the Hubbards' cases are substantially similar. Plaintiffs need to allege they were denied the full and equal enjoyment of the defendant's public accommodation as a result of their disability within the meaning of the ADA. It is not even necessary for them to allege that they actually visited the defendant's premises, as long as they say they were aware of the alleged barriers and were thereby deterred from visiting or patronizing defendant's place of business. See Pickern v. Holiday Quality Foods, Inc., 293 F.3d

1133 (9th Cir. 2002).  The discovery is also substantially similar in all of their cases, typically consisting of form interrogatories containing a standard set of definitions, followed by typical "contention" interrogatories and questions dealing with such things as prior complaints, insurance, and whether repairs are readily achievable.  Boilerplate requests for production also accompany the interrogatories.

The Hubbards use the same few experts in most of their cases, who are able to identify, without much effort, numerous violations of the ADAAG in each of the establishments they inspect.  Because the Hubbards' standard complaint contains state law claims under California Civil Code §§ 54 and 54.1 *et seq.*, their clients are also able to seek monetary damages in addition to the injunctive relief available under the ADA.  In all but a conceivable few of their cases, plaintiffs are the "prevailing party" and thus entitled to recover their reasonable attorneys fees and costs, including the fees of their expert witnesses, from defendants.

By the Hubbards' own account, "99.8% of their suits settle before going to trial."  As a result, the Hubbards have very little trial experience.  Yet, if the amount of fees awarded in this case is even close to typical, they would have recovered from defendants more than $12 million in fees over the last four years.  No wonder that other attorneys over that period of time may have decided to compete with them for the business.

The court is unable to determine with certainty what hourly rate the Hubbards' clients would now be willing to pay them, because they have furnished no evidence that any client has

5

ever actually paid them.  The problem in determining what hourly rate the market will now bear for the Hubbards' services is that they almost never actually bill and collect fees from their clients.  If in fact their clients did have to pay the Hubbards out of their own pockets, because the kinds of plaintiffs the Hubbards represent are likely to be on fixed incomes,[2] they might be <u>less</u> inclined to pay an increased hourly rate in times of inflation.

To support their request reconsideration of the court's denial of a cost of living increase the Hubbards must show that reconsideration is "necessary to correct manifest errors of law or fact upon which the judgment is based." <u>McDowell v. Calderon</u>, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)).  A party moving for reconsideration may not simply repeat arguments already rejected by the court. <u>Martinez v. First Nat'l Ins. Co.</u>, S-04-1446, 2005 WL 3299439, at *1 (E.D. Cal. Dec. 5, 2005.)

Considering that the Hubbards have still failed to show that a single paying client has ever paid them more than $150 per hour for work done by an associate and $250 per hour for work done by a partner, this court was justified in declining to depart from those well-settled rates.  <u>See</u> <u>Chalmers v. City of L.A.</u>, 796 F.2d 1205, 1210-11 (9th Cir. 1985) (observing that the relevant standard for determining a reasonable hourly rate is

---

[2] Plaintiff in this case testified in a deposition, submitted in connection with her original motion for attorneys' fees, that she is on a fixed income and that she could not recall having any attorneys' fee agreement with the Hubbards.

"the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation"); (Jan. 19, 2006 Order 10-12.) The Hubbards' self serving proclamation that "there is no one in the State of California who has more knowledge on the subject of disabled access laws" does not speak to the relevant standard, which does not necessarily depend upon the subject matter of an attorney's practice or his expertise in a particular field.[3] (Pl.'s Mot. for Recons. 5.) The standard requires only that the work be similar and the burden is on plaintiff to identify comparable attorneys. Jordan v. Multnomah County, 815 F.2d 1258, 1267 (9th Cir. 1987).

The Hubbards' arguments that the court misinterpreted the data presented in support of the increase in cost of living likewise ignore the relevant standard. Strangely, plaintiff argues that this court erred in considering the 22% cost of living increase as a nationwide statistic. (See Pl.'s Mot. for Recons. 4.) This argument overlooks the express language used by plaintiff in her previous representation to this court, which guided the court's prior analysis. Namely, plaintiff's own brief stated that "inflation has increased approximately 22%

---

[3] Moreover, it is unclear which Mr. Hubbard claims to have such expertise. Plaintiff's brief appears to jump, without explanation, between arguments challenging the rate set for Lynn Hubbard ($250 per hour) and Scott Hubbard ($150 per hour). Regardless of which attorney claims to be incapable of being compared to other local attorneys, plaintiff's arguments have no bearing on the reasonable local rate. See Blum v. Stenson, 465 U.S. 886, 898 (1984) (suggesting that courts should only adjust the reasonable rate based on the special skills of the attorney when there is evidence that these skills allowed the attorney to work more efficiently and thus bill fewer hours, since the amount awarded is the product of the hours worked multiplied by the reasonable rate).

7

(nationwide) since 1998." (Pl.'s Mot. for Attys' Fee 4 (emphasis added).) Regardless of whether the cost of living has increased in the Sacramento area by 22%, if not more, plaintiff has not presented any evidence in the form of other attorneys' billing rates that would suggest that the $250 and $150 per hour rates awarded are no longer reasonable. See Jordan, 815 F.2d at 1267 (plaintiff has the burden of "producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation").

For all their talk about the increase in the cost of living, the Hubbards have provided little if anything to answer the critical question – what are their services actually worth in the open market. In the absence of any evidence that comparable attorneys in this community are indeed billing and collecting at a higher rate, it was not clear error for the court to disregard plaintiff's cost of living statistics. See id. at n.3 (noting that the current billing rate assumedly takes into account the effects of inflation).

C. Fees for Alisha Petras

In the previous order the court also reduced plaintiff's fees for paralegal work done by Ms. Petras because plaintiff failed to provide a written declaration in accordance with California Business and Professions Code § 6450(c)(4) (requiring that an alleged paralegal with less than a baccalaureate degree obtain "a written declaration from [a supervising] attorney stating that the person is qualified to

8

perform paralegal tasks"). (Jan. 19, 2005 Order 12-14.) Plaintiff now argues that the declaration of Max Arnold, submitted with defendants sur-reply, constitutes newly discovered evidence that mandates reconsideration. (See Pl.'s Mot. for Recons. 3.)

Before a court can grant a motion for reconsideration based on newly discovered evidence, the movant must show: "(1) the evidence was discovered after [judgment], (2) the exercise of due diligence would not have resulted in the evidence being discovered in an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 992-93 (9th Cir. 2001) (quoting Defenders of Wildlife v. Bernal, 204 F.3d 920, 929 (9th Cir. 2000)). Additionally, the local rules require that the movant state "why the facts or circumstances were not shown at the time of the prior motion." E.D. Cal. R. 78-230(k)(4) (emphasis added).

Plaintiff has not provided this court with newly discovered evidence because the Arnold declaration was submitted to this Court prior to its judgment on the matter. Moreover, the evidence on which plaintiff primarily relies to establish that Ms. Petras was indeed a paralegal, another Arnold declaration made during Ms. Petras' malpractice suit against Mr. Arnold, was available when the court first heard the motion for attorneys' fees. (Petras Decl. Ex. D (Decl. in Petras v. Arnold, No. 231932 (Cal. Super Ct. filed June 24, 2004)).) Plaintiff took a risk by not undertaking the "long and arduous" task of unearthing this

9

1 declaration to support her original motion; the fact that she
2 only appreciated its potential value after the motion was fully
3 briefed does not justify reconsideration of the court's prior
4 order.
5          IT IS THEREFORE ORDERED that plaintiff's motion for
6 reconsideration be, and the same hereby is, DENIED.
7 DATED:  April 11, 2006

*[signature]*

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

10